IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

STEVE SALE                                                              PLAINTIFF

vs.                          CASE NO. 4:04CV00219GH

PHIL MASK                                                               DEFENDANT

# ORDER

Plaintiff brings this action alleging that defendant terminated him in violation of his constitutional rights, as well as his rights under state law. The gravamen of plaintiff's complaint is that he was terminated in retaliation for exercising his First Amendment right to free speech.

In early 2002, plaintiff was hired as a full-time patrol officer with the Saline County Sheriff's Department. During his tenure as a patrol officer, plaintiff contends that he began to discover and accumulate evidence and information regarding unlawful conduct on the part of various officers assigned to the Criminal Investigation Division ("CID") of the Saline County Sheriff's Department. Plaintiff claims that he and two other patrol officers, Ralph Lee Lobbs and Chris Runnells, obtained information that various members of the CID under Lieutenant Andrews' command promised female arrestees that no charges would be filed in exchange for sex, passed on information to various drug dealers to prevent their arrest in exchange for money, and accepted money from drug dealers in exchange for not arresting them. Plaintiff further contends that he obtained information that members of the CID were getting charges dropped against various drug dealers who had been arrested by other police officers in exchange for false statements against police officers and other defendants. Plaintiff

-1-

states that he reported these allegations to defendant, Phil Mask, who was the Sheriff and other supervisors.

Plaintiff states that at some point Lt. Andrews became aware of the information that was gathered by Lobbs and plaintiff, but was unaware of Runnells' involvement. Runnells was called to a meeting at which Lt. Andrews, Sergeant Gay and Sergeant Sandy Romeo attended. Runnells wore a microphone and secretly taped the meeting. During the meeting, Lt. Andrews stated that he "would give his left nut" to take down plaintiff and that he wanted Deputy Runnells to participate in a scheme to get plaintiff fired.

After this meeting, Runnells, Lobbs and plaintiff presented Sheriff Mask with a tape of the meeting as well as the information they had obtained of wrongdoing in the CID. Captain Wes Skinner and Lieutenant Tom Barnard were also in attendance at the meeting with Mask. Mask promised to take care of the situation and to investigate the wrongdoing.

After the meeting with Mask, plaintiff was promoted to Corporal. Plaintiff avers that the promotion was an attempt by Mask to prevent plaintiff from continuing to investigate and report wrongdoing by members of the CID. He contends that because he refused to overlook the unlawful conduct, Mask began to exert pressure on plaintiff by making him the target of internal investigations for alleged wrongdoing. Plaintiff states that he was the target of several internal investigations, all of which occurred after having made Mask aware of Runnells' tape. Plaintiff was cleared of wrongdoing except for the final one which resulted in his termination.

The internal investigation which resulted in the March 27, 2003 termination, arose from a search and arrest of Brian Stoker that plaintiff conducted in September, 2002. Plaintiff contends that the internal investigation also occurred soon after Mask

was informed that plaintiff was going to file a lawsuit claiming violation of his First Amendment rights.

The reasons asserted by Mask for plaintiff's termination were: "1. Falsifying sheriff's department's official documents, illegal search & seizure. 2. Insubordination. 3. Failure to comply with agreed and signed 'Garrity Warning.'" 4. Entering a residence illegally without consent." (Exhibit A to defendant's motion for summary judgment).

Plaintiff argues that the termination was in retaliation for his protected activity. He also contends that his constitutional rights and his rights under state law were violated when he was denied the right of counsel to be present during the polygraph.

Qualified Immunity

Defendant asserts that he is entitled to qualified immunity. The inquiry requires that the Court first determine whether the facts as asserted by the plaintiff show that defendant's conduct violated a constitutional right. If the answer is no, defendant is entitled to summary judgment. If the answer is yes, the Court must next determine whether the right was clearly established, that is, that a reasonable official would understand that what he is doing violates plaintiff's rights. *Powell v. Johnson*, 405 F. 3d 652 (8th Cir. 2005).

Defendant contends that plaintiff has failed to establish violation of a constitutional right. He relies on plaintiff's assertion that he was terminated because he wanted his attorney present during the polygraph examination. Defendant states that plaintiff does not have a Fifth or Sixth Amendment right to have an attorney present during a polygraph examination given during a administrative investigation.

The issue was addressed by the Eighth Circuit in *Hill v. Johnson*, 160 F.3d 469 (8th Cir. 1998).

> The [Fifth] Amendment is violated when public employees are compelled to testify by employers who require the employees to either incriminate themselves or to forfeit their jobs. *See Garrity v. New Jersey*, 385 U.S. 493, 497-98, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967); *Uniformed Sanitation Men*, 392 U.S. at 284, 88 S.Ct. 1917. As long as a public employer does not demand that the public employee relinquish the employee's constitutional immunity from prosecution, however, the employee can be required to either testify about performance of official duties or to forfeit employment. *See Uniformed Sanitation Men*, 392 U.S. at 284, 88 S.Ct. 1917; *Gulden v. McCorkle*, 680 F.2d 1070, 1073-74 (5th Cir.1982). Given "the important public interest in securing from public employees an accounting of their public trust[,][p]ublic employees may constitutionally be discharged for refusing to answer potentially incriminating questions concerning their official duties if they have not been *required to surrender their constitutional immunity.*"Lefkowitz v. Cunningham, 431 U.S. 801, 806, 97 S.Ct. 2132, 53 L.Ed.2d 1 (1977). The Fifth Amendment is violated only by the combined risks of both compelling the employee to answer incriminating questions and compelling the employee to waive immunity from the use of those answers. *See Harrison v. Wille*, 132 F.3d 679, 682 (11th Cir.1998).

*Id*. at 471.

Under *Garrity v. New Jersey*, 385 U.S. 493 (1967), statements made by a police officer during the course of an internal investigation cannot be used against the officer in subsequent criminal proceedings.

In this case, plaintiff was informed of his rights, which was entitled "GARRITY WARNING." This form stated as follows:

> This is and [sic] official administrative inquiry regarding misconduct or improper performance of official duties. In accordance with the Privacy Act of 1974 you are advised that the authority to conduct this interview is contained in Title 28, code [sic] of Federal Regulations, Section 0.137 and 0.85(c).
>
> This inquiry pertains to Falsifying Police Documents.
>
> This purpose of this interview is to obtain information which will assist in the determination of whether administrative action is warranted.
>
> You are going to be asked a number of specific questions regarding the performance of your official duties.
>
> You have a duty to reply to these questions, and agency disciplinary action, including dismissal, may be undertaken if you refuse to answer or fail to reply fully and truthfully..

> Nether your answers nor any information or evidence gained by reason of your answers can be used against you in criminal proceeding, except that if you knowingly and willfully provide false statements or information in your answers, you may be criminally prosecuted for that action. The answers you furnish and any information or evidence resulting there from may be used in the course of agency disciplinary proceedings, which could result in disciplinary action, including dismissal.

The form, signed by plaintiff on March 21, 2003, acknowledged that plaintiff had read and understood his rights and obligations as set forth in the warning. Because he "was not asked to waive his constitutional privilege against self-incrimination to answer job-related questions, his dismissal for refusal to answer does not violate that privilege." *Hill*, 160 F.3d at 471.

Relying on Ark. Code Ann. § 12-12-702, plaintiff contends that he was entitled to counsel under Arkansas law. That section provides:

> Prior to administering any psychological evaluation tests, the person to whom the test is administered must be warned prior to any questioning that:
>
> (1) He or she has a right to remain silent;
>
> (2) Anything he or she says can be used against him in a court of law;
>
> (3) He or she has the right to the presence of an attorney; and
>
> (4) If he or she cannot afford an attorney, one may be appointed for him or her prior to his or her questioning if he or she so desires

Defendant argues that the statute applies to criminal situations. Plaintiff cites an unpublished opinion by Judge Moody finding that Ark. Code Ann. § 12-12-702 is not limited to criminal investigations. *Rauls, Bones and King v. Tolson*, 5:00CV00348 JMM (E. D. Ark. July 19, 2001, docket entry 53). The Court is not persuaded that the *Rauls* holding is controlling in this instance. There is no discussion of *Garrity* and no indication that the plaintiff had been given a *Garrity* warning.

Even assuming that there is a right to counsel in administrative investigations under Arkansas law, the Court cannot find that the right was clearly established. Judge Moody's unpublished decision is the only one addressing the Arkansas statute. The overwhelming majority of cases have found that "that when a public employer conducts an internal investigation it may dismiss an employee who refuses to answer investigative questions, but it may not use any incriminating statements against the employee in a criminal prosecution regarding the matter under investigation." *McKinley v. City of Mansfield*, 404 F. 3d 418, 423 (6th Cir. 2005). *See also Grabinger v. Conlisk*, 320 F. Supp. 1213 (no Fifth or Sixth Amendment violation where police officers suspended for refusing to take polygraph when they were denied presence of counsel)

Thus, the Court finds that defendant is entitled to qualified immunity on plaintiff's Fifth and Sixth Amendment claims.

There is no doubt that plaintiff has properly alleged a violation of his First Amendment right, that is not to be discharged in retaliation for exercising his right to free speech. To determine whether the right was clearly established, the Court must first determine whether the speech is protected by the First Amendment. The determination involves a two-step inquiry; first whether the speech can be fairly characterized as constituting speech on a matter of public concern and second, if the speech is a matter of public concern, then the Court must apply the *Pickering* balance test, which requires the Court to balance the interests of the employee as citizen to comment upon matters of public concern with the interests of the employer in promoting the efficiency of public services it performs through its employees. *Sexton v. Martin*, 210 F. 3d 905, 910 (8th Cir. 2000).

Allegations of potential misconduct by public officers involve matters of public concern. *Id.* (citing cases) . "Complaints to superiors or private communications with

an employer about matters of public concern are also protected under the first amendment." *Campbell v. Arkansas Dept. of Correction,* 155 F.3d 950, 959 (8th Cir. 1998). *See also Powell*, 405 F. 3d 652 (officer's criticism of Sheriff Department's promotion policies was protected activity). Here, plaintiff's speech is not purely job-related but involves alleged wrongdoing in the Sheriff's Department. The Court is of the opinion that the allegations involve matters of public concern and therefore are protected speech.

As to the next step in the process, the *Pickering* balance, defendant has not presented sufficient evidence to show that plaintiff's speech had an adverse impact on or disrupted the operations of the Sheriff's Department. *See Sexton,* 210 F. 3d at 912-913.

The Court therefore concludes that at the time of plaintiff's termination the law was clearly established that defendant could not retaliate against plaintiff for exercising his First Amendment right to free speech, and defendant is not entitled to qualified immunity on plaintiff's First Amendment claim.

Plaintiff also contends that his rights to due process were violated when he was denied a name-clearing hearing.[1] To establish his entitlement to a "name-clearing hearing," the aggrieved employee must show that: "1) the public employer's reasons for the discharge stigmatized the employee by seriously damaging his standing and association in the community or by foreclosing employment opportunities that may otherwise have been available; 2) the public employer made the reason or reasons public; and 3) the employee denied the charges that led to the employee's firing. . . .

---

[1]This allegation was not raised in the complaint but was raised for the first time in his response to the motion for summary judgment.

-7-

The requisite stigma has been found when the allegations involve 'dishonesty, immorality, criminality, racism, or the like.'" *Gibson v. Caruthersville School Dist. No. 8*, 336 F.3d 768, 773 (8th Cir. 2003)(citations omitted)

Here, plaintiff has submitted an affidavit contending that his termination was the subject of newspaper reports and that he has been stigmatized in the community. He was arrested at his home on suspicion of having committed three felonies and three misdemeanors during the September, 2002, arrest, charges of which he was later cleared. Plaintiff contends that he was terminated under allegations of misconduct, including dishonesty, and that these allegations were widespread..

The Court finds that plaintiff has stated a claim for a Fourteenth Amendment due process violation. The right to a name clearing hearing was clearly established at the time of plaintiff's termination. *See e.g., Shands v. City of Kennett*, 993 F. 2d 1337, 1348 (8th Cir. 1993). Thus, the Court finds that defendant is not entitled to qualified immunity for plaintiff's due process claim.

Summary Judgment

Defendant argues that summary judgment on the merits of plaintiff's claim is proper. He argues that the evidence reveals that plaintiff was discharged for legitimate reasons, and not for exercise of First Amendment protected speech. To establish a claim of unlawful First Amendment retaliation, plaintiff "must show that he suffered an adverse employment action that was casually connected to his participation in a protected activity. . . Once the employee satisfies his initial burden, the burden shifts to the employer to show a legitimate, nondiscriminatory reason for his or her actions. . . If the employer meets this burden, the burden shifts back to the employee to show that [the] employer's actions were a pretext for illegal retaliation." *Duffy v. McPhillips*, 276 F. 3d 988, 991 (8th Cir. 2002).

Here, the Court finds that the evidence submitted clearly reveals that a factual dispute exists as to the real reason for plaintiff's termination. For example, the reasons for the internal investigation and the manner in which it was conducted are suspect. The investigation occurred about six months after the incident. There is evidence that the complaining officers were told to change their statements to support allegations of misconduct by plaintiff. Furthermore, although defendant contends that Department policy required plaintiff to submit to a polygraph examination, there is evidence that a polygraph was not required in every internal investigation, and other individuals involved in the September, 2002, incident were either not interviewed or given a polygraph examination.

Additionally, plaintiff has submitted evidence that officers who had engaged in arguably more egregious misconduct than that attributed to plaintiff were not as harshly disciplined.

In sum, the Court finds that there is a genuine issue of material fact as to whether plaintiff's speech was a substantial or motivating factor in his termination. *Graves v. Arkansas Dept. of Finance and Admin.*, 229 F.3d 721, 723 (8th Cir. 2000)

Similarly, the facts are in dispute with regard to plaintiff's allegation that he was denied a name-clearing hearing. Thus, defendant is not entitled to summary judgment on this claim.

To the extent plaintiff brings a claim for breach of contract under state law, that claim must be dismissed. Under Arkansas law, plaintiff was an at-will employee. He has not presented any evidence of an actual or implied employment contract.

Accordingly, the motion for summary judgment is granted in part and denied in part. Defendant is granted summary judgment on plaintiff's claims of violation of his rights under the Fifth and Sixth Amendments. Additionally, plaintiff's claim for

breach of contract is dismissed. In all other aspects, the motion for summary judgment is denied.

    IT IS SO ORDERED this 15th day of July, 2005.

<em>/s/ George Howard, Jr.</em><br>
_____<br>
UNITED STATES DISTRICT JUDGE